

November 3, 2022

<u>BY ECF</u>
HON. Kiyo Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

           *Re: United States v. Devon Bristol; 20 Cr. 213 (KAM)*

Dear Judge Matsumoto:

  We respectfully submit this letter in advance of Mr. Devon Bristol's ("Devon") sentencing proceeding which is scheduled for November 22, 2022, following his May 24, 2022 guilty plea to Count Ten of the Indictment, Interstate Stalking; a crime which unfortunately resulted in Mr. Glover being shot and physically harmed. We acknowledge that at the time Devon engaged in the offense conduct, he was on Probation for a felony conviction (Attempted Criminal Sale of a Controlled Substance in the 3rd degree), but in the intervening time between his offense conduct (February and June 2018) and arrest (June 23, 2020), Devon was on a positive path – he was enrolled in college studying business administration and helping raise his three children (PSR ¶¶ 72-74, 81).

  While we do not suggest that Devon is an angel, we submit that he is not an irredeemable villain either. His criminal history prior to this instant conduct was for all nonviolent offenses, and his prior sentences included two relatively short jail terms; 3 days, and 6 months.[1] We respectfully submit that his prior failings are the result of immaturity as well as the environment where he grew up, which caused him to exercise poor judgment in the past, but never for something like this.

  Insofar as this tragic offense is concerned, Devon regrettably yielded to his emotions and loyalty to his friends and agreed that he would help them locate John Doe so that he could be harmed.[2] Notably, Devon did not engage in any meaningful conduct in furtherance of the unlawful agreement. Devon was not present for, nor did he participate in the shooting of John Doe. And, while he may have been aware that his coconspirators were using a tracking device to locate John Doe, Devon neither accessed, possessed or utilized the GPS tracking device, nor did he actively seek out John Doe. His lack of meaningful participation is reflected in the government's agreement that a 2 point minor role reduction (U.S.S.G. § 3B1.2(b)) is appropriate. (See plea agreement at ¶2). Nevertheless, despite his lack of active participation in the scheme, Devon acknowledged his guilt for agreeing to the criminal conduct and now

---

[1] As detailed in the PSR at ¶¶56 and 57, Devon was sentenced to 3 days in jail for violating his one year probationary sentence for driving with a revoked license and to 6 months for Criminal Possession of a Controlled Substance in the 7th Degree – both are misdemeanors. Devon has one felony conviction for Attempted Criminal Sale of a Controlled Substance in the 3rd Degree for which he was sentenced to a term of five years' probation.

[2] The motive, while inexcusable, was that John Doe#1 was believed to have directed the killing of Jonathan Thomas, a friend of Devon and his codefendants.

stands before the Court for sentencing. The question that looms is what sentence is sufficient but not greater than necessary pursuant to 18 U.S.C. §3553.

There is no dispute concerning the applicable Guidelines range which is Level 31 and since Devon is in Criminal History Category III, the advisory sentencing range is 135-168 months. However, it is well-settled that the federal sentencing guidelines are but one factor among several in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). The guidelines are only the "starting point and initial benchmark…" *Id., citing Gall v. United States*, 552 U.S. 38, 50 (2007). "Sentencing courts are not to 'presume that the Guidelines range is reasonable,' and instead they 'must make an individualized assessment based on the facts presented.'" *United States v. Thavaraja*, 740 F.3d 253, 259 (2d Cir. 2014) (internal citations omitted). It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the § 3553(a) factors. *Id., Kimbrough*, 552 U.S. at 109, *citing Gall*, 552 U.S. at 51.

In determining a sentence that is "sufficient, but not greater than necessary," the first of those factors the judge must consider is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Without a doubt, the breadth of this factor alone extends far beyond the guidelines and implores the sentencing judge to consider the unique circumstances and characteristics of the defendant in each case. A consideration of those characteristics, along with the remaining six factors,[3] may render sentences that do not fit within the guidelines, yet are fair and meet the goals of sentencing set forth in § 3553(a)(2).

Therefore, the Court may not simply presume that the Guidelines range is reasonable. *Gall*, at 50. Rather, the Court must make an individualized assessment based on the facts presented. From its unique vantage, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing. . ." *Kimbrough*, 552 U.S. at 101, *citing* 18 U.S.C. § 3553(a). The not "greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law" and "provide just punishment for the offense." 18 U.S.C. § 3553(a). Indeed, as the Supreme Court suggested in *Gall*, a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case. *Gall*, at 54; *see also Rita v. United States*, 551 U.S. 338, 351 (2007) (observing that district court may consider arguments that "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

---

[3] The seven factors are (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the need for the sentence imposed to reflect the goals of sentencing set forth in § 3553(a)(2); (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a).

### Devon's Personal Characteristics

Devon Bristol is a 31 year old, father of three who was raised in a lower income household by his mother following his parents' divorce when he was 2 years old. (PSR ¶68, 71). He has one brother, Marlon (a codefendant in this matter) and a half-brother, Wilton (¶69). Devon is described as a "great father" by those that know him and a friend always willing to help and provide constructive advice. By all accounts, Devon is devoted to his children, and although not subject to a court order, he provides financial support for his 10 year old daughter who, prior to his arrest, he saw daily, transporting her to and from school. PSR ¶72. He regularly sees his other children (ages 3 and 4), including his son who is deaf in one ear. PSR ¶¶73-74.

Eddie Estrada, a friend for over twenty years, describes Devon as a "positive, responsible and caring friend" who is "trustworthy" and "honest". Notably, he characterizes Devon as always willing to help and provide positive constructive advice.[4] Ex. A at 1.

Devon's mother, Marlyn, describes him to be an "outgoing, responsible and a good father" and while she acknowledges that Devon "made bad decisions", she also stresses that he was recently getting his life together and going to school. PSR ¶70  In this regard, following his instant offense conduct, Devon re-enrolled in Queensborough Community College ("QCC"), from 2019-2020, and was studying business administration. PSR ¶81. Eddie Estrada describes that while attending QCC, Devon would enthusiastically discuss his schooling and desire to own a business so he could provide better opportunities for his children. Ex. A at 1. Edgar Velasquez provides a similar observation: "... I've noticed a drastical (sic) change in him once he had his 2nd child, he returned to College and started working." Ex. A at 2.

Devon, who had also reconnected with his father when he was 18 years old, was also working with his father as an electrician's apprentice during this time period. PSR ¶¶ 71, 84; Ex. A at 3. This post-offense conduct is notable as it demonstrates Devon's positive growth in the years between his offense conduct and instant arrest.

Since the time of his arrest, Devon has been detained at the MDC Brooklyn where he participated in various educational programs:

Diabetes;
Business Acumen;
10 Soft Skills;
Cardio Training;
Columbia University Advanced Philosophy;
Recreation & Leisure Journal;
Enjoying the Second;
Weight Management;
Health Journal; and
Parenting Modified Operations.

---

[4] Attached as Ex. A are a collection of character letters concerning Mr. Bristol, collectively bates stamped for ease of reference.

PSR ¶76.

We respectfully submit that Devon's participation in these programs is a reflection of his commitment to better himself which warrants consideration as the Court deliberates concerning how much additional punishment is necessary.

### Conditions of Confinement Since Arrest

Punishment and specific deterrence run hand in hand with rehabilitation and this is accomplished, in part, by prison providing a sobering reality of the consequences for engaging in criminal conduct. That being said, the punitive aspect of prison is certainly challenging and awakening for someone, like Devon, who, despite having been previously incarcerated (once for 6 months – but released after serving 4, and a sentence of 3 days jail), he had never before experienced the harrowing conditions which resulted from the Covid-19 pandemic (including lockdowns, lack of visits and phone calls, scarce hot meals and infrequent showering, etc). That said, we respectfully submit that the extraordinarily difficult time he has thus far spent in custody at the MDC, has provided the proverbial "slap in the face" to get him on the right track and impress upon him the serious consequences for his admittedly serious conduct.

The national COVID-19 epidemic, without question, is beyond anything contemplated by the drafters of the Sentencing Guidelines. We respectfully submit that the important notion of "just punishment" was never meant to include the ramifications of serving a guidelines sentence during a global pandemic.  Time spent under such intense emotional strain simply cannot be equated with the anticipated punishment represented in the sentencing guidelines. It would be unjust to discount this reality. Reduced to its essence, we respectfully submit that each month served in detention during this pandemic is "worth more" when considering the requirement of just punishment than a month spent under more "normal" circumstances. Notably, this Court relied on the harsh conditions at the MDC as part of its decision to impose a below-guidelines sentence to Mr. Beckett.  Sentencing Transcript for Mr. Beckett at pp. 39-40. ("I do, however, take into consideration that Mr. Beckett experienced the harsh conditions of the MDC during the Covid-19 pandemic".)

These extreme conditions were not intentional — they go way beyond what the prison system or courts intended to be visited upon any human being. We do not seek to fault the bureau of prisons -- that is irrelevant to the court's current determination — which is, how much additional punishment is necessary to meet the goals of justice for Devon Bristol. We submit that the overly harsh conditions of confinement, which were so severe that one could call them barbaric, have already deterred Devon, punished him and instilled upon him the harsh reality of the consequences of his actions. The time he has served has certainly, we submit, scared Devon straight. Suffice to say that Devon has already learned the error of his ways; he's learned, he's grown, and he's reflected.

Finally, during the last two years and five months,[5] Devon has reflected on his past, including his criminal conduct and has acknowledged his guilt and remorse to his friends, family and probation. Notably, when speaking with Probation, Devon described his decision to engage in the instant offense

---

[5] As of the date of sentencing, Devon will have been in custody for 28 months and 30 days.

One Old Country Road, Suite 347            www.efranzlaw.com            (212) 355-2200 (phone)
Carle Place, New York 11514                                              (212) 937-2217  (fax)

conduct as an "'emotional decision'" following the loss of his close friend, Jonathan Thomas", whom he believed was murdered by Glover. PSR ¶42. He also expressed remorse for his conduct stating that:

> It was not his idea, but he went along with it [locating John Doe #1]. He stated that he understands what it is like to lose a friend and is regretful that his actions could have caused others to experience this loss. He stated he is "truly sorry" and recognizes his actions contributed to "an endless cycle".

PSR ¶42.

Devon similarly expressed remorse to his friend and family for what he had done (see, e.g. Ex. A at 1 (letter from Eddie Estrada) and to his eldest brother, Wilton, who adds that he has discussions with Devon about "reflection, remorse, acceptance of one's actions, active change, not just talk". Ex. A at 5. Wilton Bristol). Devon also admitted his conduct to Edgar Velasquez a friend for 20 years and Mr. Velasquez observed his conversation with Devon to be a sign of growth and progress toward becoming a better person. Ex. A at 2.

We submit that Devon's open acknowledgement and remorse for his conduct is a significant positive stride toward his rehabilitation and is worthy of this Court's consideration when fashioning sentence. His candor with his friends and family demonstrates that Devon is not minimizing his conduct, nor is he in denial. Put simply, he is regretful for his conduct. Suffice to say, we respectfully submit that Devon is a man who has recognized the error of his ways and is on a path filled with hope at becoming a productive member of society.

We respectfully submit that in addition to his positive attributes, when measuring the appropriate sentence for Devon, this Court should consider the sentence imposed on his codefendant, Desmonn Beckett – who was sentenced to 64 months for his role in the criminal conduct (he drove Mr. Corbett to and from the scene of the shooting, well-aware of what was to occur)(PSR ¶38), conduct which we submit is much more significant than Devon's. *See* 18 U.S.C. 3553(a)(6).

We acknowledge that Devon's criminal history is more serious than Mr. Beckett's – Devon has three prior criminal convictions (two misdemeanors and one felony), all for non-violent offenses; Mr Beckett has a prior conviction for criminal possession of a weapon (a firearm)[6] in the fourth degree (ECF 147 at 2 – Gov't Sentencing Letter concerning Mr. Beckett). Furthermore, according to the Government Mr. Beckett is a member of the Elite Assassin Milla street gang, who had "committed himself to a criminal lifestyle and to a life of violence" Id. Devon, on the other hand was not a member of the gang and his association with some of its members was due to friendship and not a commitment to be a member of a criminal organization. In short, while we appreciate that Devon's criminal history is more extensive than Mr. Beckett's, we respectfully submit that their respective criminal histories should not overshadow their relative roles in the criminal venture such that a sentence moored closer to the 64

---

[6] [O]ne firearm [...] was hidden in the wheel-well of the vehicle in which he was found that day." Transcript of September 1, 2021 sentencing proceeding for Mr. Beckett, at page 23.

months imposed on Mr. Beckett rather than the advisory guidelines range of 135-168 months is appropriate.

Conclusion

Devon Bristol has accepted responsibility and acknowledged to probation, family and friends, his sincere remorse for his offense conduct. Notably, Devon's conduct in the criminal venture was minor (as evidenced by the minor role reduction) as compared to his codefendants. His behavior since then – caring for his family, enrollment in college and employment with his father, are noteworthy as they signal that Devon was on the right path, prior to being arrested in the instant matter. He has been punished significantly, thus far serving approximately 29 months in custody, during the unprecedented conditions of confinement which accompanied the Covid-19 pandemic.

For the reasons stated herein, we respectfully submit that a below-guidelines sentence is appropriate as it will be sufficient but not greater than necessary to meet the goals of sentencing. See 18 U.S.C. §3553(a).

Respectfully Submitted,

*Eric Franz*
_____
ERIC FRANZ